**Ireneo Ysip ISRAEL, Josefina Torres Israel, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 82–7411.**

United States Court of Appeals, Ninth Circuit.

Submitted April 19, 1983.*

Decided July 15, 1983.

---

\* The panel finds this case appropriate for submission without argument pursuant to Fed.R. App.P. 34(a) and 9th Cir.R. 3(a).

William B. Odencrantz, San Pedro, Cal., Joe D. Howerton, Los Angeles, Cal., Lawrence Lippe, Washington, D.C., for respondent.

Raymond Campos, Los Angeles, Cal., for petitioners.

Before GOODWIN, KENNEDY, and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Petitioners, Ireneo Ysip Israel and his wife Josephina Torres Israel (Israels) seek review of the Board of Immigration Appeals' decision denying their motions to reopen to apply for suspension of deportation under 8 U.S.C. § 1254(a)(1). The BIA found that the Israels failed to make a prima facie showing of extreme hardship and did not merit discretionary relief. We hold that the BIA did not abuse its discretion in finding that the Israels failed to make a prima facie showing of extreme hardship and accordingly affirm the BIA's decision.

The Israels are natives and citizens of the Philippines. Mr. Israel entered the United States in 1968 as a nonimmigrant visitor authorized to stay until January 5, 1969. At his deportation hearing, held in February 1969, he admitted deportability and was granted voluntary departure through February 28, 1969. The BIA dismissed his appeal. In August 1969, upon motion of the INS, this court dismissed Mr. Israel's peti-

tion for review as frivolous. He failed to depart.

On May 31, 1969, after the BIA had dismissed her husband's appeal, Mrs. Israel entered the United States as a nonimmigrant visitor authorized to stay only through December 30, 1969. At her deportation hearing held in March, 1970, she admitted deportability and was granted voluntary departure through May 16, 1970. Mrs. Israel did not appeal nor did she depart.

Since 1969, both Mr. and Mrs. Israel have been employed. They have two United States citizen daughters who were born after they were found deportable but their other relatives reside in the Philippines. Several years after their deportation orders became final the Israels also purchased a home.

On May 5, 1982 after years of investigation, the INS located the Israels and took them into custody. The following day the Israels filed identical motions to reopen to apply for suspension of deportation under 8 U.S.C. § 1254(a)(1) alleging extreme hardship to themselves and to their two daughters if deported. Their claim of hardship was, in effect, based on their length of time in this country during which they had purchased their home and established roots here. They also claimed hardship to their daughters who attend primary school here and have never been to the Philippines. In addition, they made a claim of medical hardship based on the possibility that Mrs. Israel would undergo surgery.

An immigration judge denied Mrs. Israel's motion on the discretionary grounds and she appealed.[1] The BIA consolidated Mrs. Israel's appeal with her husband's motion to reopen. The BIA concluded that the Israels failed to present a prima facie case of extreme hardship to themselves. Inasmuch as most of their stay in the United States was illegal, the BIA afforded little weight to their claim that they considered this country their home. The BIA specifi-

cally noted that other than the Israels' daughters, their relatives were in the Philippines. In addition the BIA found that the Israels presented no claim of economic hardship and that their claim of medical hardship was insufficient. In addition, the BIA concluded that the hardship alleged as to their children, separation from friends and a familiar environment, was not extreme, particularly because their relatives lived in the Philippines.

The BIA also concluded that the Israels did not merit discretionary relief because they evaded deportation and all of their equities were acquired after they were subject to final orders of deportation. Finding that the Israels failed to make a prima facie showing of extreme hardship and that they did not merit discretionary relief, the BIA dismissed Mrs. Israel's appeal and denied Mr. Israel's motion to reopen. The Israels filed a timely petition for review of the BIA's decision.

ANALYSIS

Section 244(a)(1) of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1254(a)(1), permits the Attorney General in his discretion to adjust the status of an alien to that of a lawful permanent resident if the alien establishes: (1) continuous physical presence in the United States for a period of at least seven years immediately preceding the date of application; (2) good moral character during that period; and (3) extreme hardship to the alien or the alien's spouse, parents or child who is a citizen or permanent resident of the United States should the alien be deported. *Reyes v. INS,* 673 F.2d 1087, 1088 (9th Cir.1982). The alien carries the burden of demonstrating both statutory eligibility and equities meriting the favorable exercise of discretion. 8 C.F.R. § 242.17(d); *Villena v. INS,* 622 F.2d 1352, 1357 (9th Cir.1980) (en banc). When a motion to reopen is based on § 1254(a)(1), the alien must make a prima facie showing that deportation would result in extreme hardship. *Reyes v. INS,* 673 F.2d at 1089.

---

1. Where, as in this case, an alien does not appeal from an immigration judge's order of deportation, the immigration judge has initial jurisdiction to rule on a motion to reopen. 8 C.F.R. § 242.22.

■ The BIA has the discretion to construe extreme hardship narrowly. *INS v. Wang,* 450 U.S. 139, 144–145, 101 S.Ct. 1027, 1031–1032, 67 L.Ed.2d 123 (1981). Accordingly, the BIA has broad discretion to grant or deny a motion to reopen. *See Agustin v. INS,* 700 F.2d 564, 565 (9th Cir.1983). Absent an abuse of discretion by the BIA, this court will affirm the denial of a motion to reopen. *Id.*

The Israels allege that the BIA abused its discretion by finding that they failed to make a prima facie showing of extreme hardship and by failing to consider all relevant factors bearing on extreme hardship. We find the Israels' arguments to be meritless.

■ The Israels first assert that the BIA failed to consider the breakup of their family. In both the Israel's motion to reopen and in their supporting affidavits, however, they did not allege any facts suggesting that if deported they would be required to leave their two citizen daughters in the United States. Because this claim was not raised in the administrative proceedings or supported by any evidence, the BIA did not err by failing to consider it. *See Ramirez-Gonzalez v. INS,* 695 F.2d 1208, 1212 (9th Cir.1983). Moreover, because the Israels failed to raise this claim in the administrative proceedings, we need not address it. The Israels may not raise a claim for the first time in this court. *See Tejeda-Mata v. INS,* 626 F.2d 721, 726 (9th Cir.1980), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982).

Relying on *Barrera-Leyva v. INS,* 637 F.2d 640, 643 (9th Cir.1980), *reh'g granted,* 653 F.2d 379 (9th Cir.1981), and *Prapavat v. INS,* 638 F.2d 87, 89 (9th Cir.1981), *reh'g granted,* 662 F.2d 561 (9th Cir.1981), the Israels next contend that the BIA failed to consider the aggregate effect of deportation on all four family members. Those cases were premised on this court's opinion in *Wang v. INS,* 622 F.2d 1341, 1347 (9th

Cir.1980) (en banc), rev'd 450 U.S. 139, 101 S.Ct. 1027, 68 L.Ed.2d 342 (1981).

In *Wang,* we held that the petitioners' claim that their deportation would impose economic, cultural and educational hardship upon their citizen children considered together with the claim that deportation would impose severe economic hardship on themselves and their children constituted a prima facie case of extreme hardship sufficient to reopen the deportation proceedings. 622 F.2d at 1349. Our decision in *Wang* was however summarily reversed by the Supreme Court. *INS v. Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981).

In *Balani v. INS,* 669 F.2d 1157 (6th Cir. 1982) the Sixth Circuit noted that the Supreme Court's summary reversal of *Wang:*

can be taken as indicating the Court's view that such a set of circumstances, considered together (economic, cultural and educational hardship to citizen children and the necessity of liquidating business and personal assets) ... does not establish, *as a matter of law,* that the Board has abused its discretion in refusing to allow the Petitioner to re-open deportation proceedings. The *Wang* reversal indicates the Supreme Court's determination that matters of immigration should be left with the Service, to be reviewed by the Court only upon a showing of abuse of discretion.

*Id.* at 1162. (footnote omitted).

■ We agree with the Sixth Circuit that the Supreme Court's summary reversal of *Wang* demonstrates that extreme hardship is not established as a matter of law when alleged hardships to citizen children are considered together as opposed to separately from the alleged hardships to the alien seeking relief from deportation.

■ On the facts before us we find no basis for concluding that the BIA abused its discretion because it considered the alleged hardships to the Israels separately from the alleged hardships to their daughters.[2] *See, e.g., Balani,* 669 F.2d at 1162, n. 5.

**2.** Counsel for the Israels has apparently failed to note that after the Supreme Court granted certiorari and reversed *Wang,* this court grant-

ed rehearing in both *Barrera-Leyva* and *Prapavat.* In *Barrera-Leyva,* we concluded that in light of the Supreme Court's ruling in *Wang,*

■ The Israels also contend that the BIA failed to consider economic hardship and inability to obtain employment. The record does not support this claim. In their motions to reopen, the Israels did not allege economic hardship. Nor did they allege that they would be unable to find employment or any facts supporting this inference. Thus, the BIA did not err by not considering these factors. These issues may not be raised for the first time before us. *Ramirez-Gonzales*, 695 F.2d at 1212; *Tejeda-Mata*, 626 F.2d at 726.

■ Insofar as the Israels contend that the BIA did not consider the hardship occasioned by separation from the community, their contention is meritless. Our review of the record demonstrates that the BIA did consider this alleged hardship but attached little weight to the fact that they considered the United States their home. The BIA acted properly in doing so given that almost all of the Israels' stay in this country was illegal and they purchased their home several years after they were found deportable. *See Villena v. INS*, 622 F.2d at 1360. Moreover, we note as did the BIA, that by returning to the Philippines the Israels and their children can be reunited with their relatives.

■ The Israels are wrong in asserting that the BIA failed to consider the cultural hardship that deportation would cause their daughters. The BIA did consider the effect of separation from friends and familiar environment but concluded it was not "extreme" hardship. Given that the Israels failed to allege facts suggesting that this hardship would be extreme and that the Israels' relatives reside in the Philippines, the BIA's conclusion was reasonable. With regard to the Israels' claim that the BIA failed to consider the educational hardship to their daughters, they did not argue educational hardship or present any facts suggesting such in the administrative proceedings. There, they merely asserted that their daughters attended school and had professional aspirations. Thus, the BIA did not err in failing to consider educational hardship to the Israels' daughters. *See Ramirez-Gonzalez*, 695 F.2d at 1212.

■ Because we find that the BIA did not abuse its discretion in finding that the Israels failed to present a prima facie case of extreme hardship we do not address the Israels' claims regarding the BIA's denial of their motions as a matter of administrative discretion.

■ The Israels' claims that the INS deliberately delayed forwarding files to the BIA within the required time period and failed to respond timely to their motions to reopen in violation of 8 C.F.R. 3.8(b) and 3.8(c) respectively are frivolous.

8 C.F.R. 3.8(b) governs the distribution of motion papers when the alien is the moving party. This section does not set any time limits. The INS forwarded the files to the BIA within five weeks of the filing of the motion to reopen. The Israels fail to indicate why this delay was unreasonable. They also fail to demonstrate that INS officers deliberately withheld the files.

8 C.F.R. § 3.8(c) provides that if the INS is the moving party the alien has ten days to submit a brief in opposition to the motion

---

our previous conclusion was erroneous. Accordingly, we affirmed the BIA's denial of suspension of deportation under 8 U.S.C. § 1254(a)(1). 653 F.2d 379, 380 (9th Cir.1981).

On rehearing in *Prapavat,* although we again reversed the BIA, we did so because we believed that BIA did not consider all the factors relevant to the extreme hardship determination. 662 F.2d 561 (9th Cir.1981). Unlike *Prapavat,* in this case the BIA did consider all the factors relevant to the determination of extreme hardship. The BIA's opinion demonstrates that it found little substance to the Israels' arguments, considered separately or

collectively. *See, e.g., Ahn v. INS,* 651 F.2d 1285, 1287–88 (9th Cir.1981).

The Israels also err in asserting that the BIA was required to consider the hardship to all four family members collectively. Section 1254(a)(1) allows the BIA to consider the harm to Mr. Israel together with the harm to his daughters or the harm to Mrs. Israel together with the harm to their daughters. In considering the Israels' individual cases, however, the other spouse would not be a person protected under the statute. Therefore, the BIA could not consider the hardship, if any, to the other spouse.

to reopen. Where, as here, the alien is the moving party this section is inapplicable.

Accordingly, we affirm the BIA's decision and deny the petition for review.