**Donald TAFFI; Madelaine Taffi, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

Nos. 94–55011, 94–55019.

United States Court of Appeals, Ninth Circuit.

June 3, 1996.

---

PROCTER HUG, Jr., Chief Judge.

Upon the vote of a majority of nonrecused regular active judges of this court, it is ordered that this case be reheard by the en banc court pursuant to Circuit Rule 35–3.

---

■

**Angelita EIDE–KAHAYON, Petitioner,**

v.

**UNITED STATES IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 94–70607.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1996.

Decided June 10, 1996.

Frank S. Triana, El Paso, Texas, for petitioner.

Stephen W. Funk and Stewart Deutsch, United States Department of Justice, Washington, DC, for respondent.

Before GOODWIN and HAWKINS, Circuit Judges, and WARE,* District Judge.

PER CURIAM:

Angelita Eide–Kahayon ("Petitioner") seeks review of a decision of the Board of Immigration Appeals ("BIA") affirming the order of an immigration judge which denied Petitioner's motion to reopen to apply for an adjustment of status. We have jurisdiction under 8 U.S.C. § 1105a(a) and deny the petition for review.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, a native and citizen of the Philippines, entered the United States with a nonimmigrant visitor's visa in September 1980 and thereafter married Eugene Eide, a United States citizen. Petitioner then sought to adjust her status with the Immigration and Naturalization Service ("INS"). At her adjustment of status interview, Petitioner acknowledged a prior marriage in the Philippines, but provided a death certificate indicating that her husband had died on September 15, 1980. The INS adjusted Petitioner's status to lawful permanent resident ("LPR") in March 1981.

Rescission proceedings were conducted in January 1986 following an investigation which revealed that Petitioner's husband in

* Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation.

the Philippines was still alive. At her rescission hearing Petitioner testified that when she found out that her first husband was still alive, she divorced him.[1] In December 1986, Petitioner's LPR status was rescinded based on her earlier fraudulent misrepresentation. In December 1987, the BIA affirmed the rescission order and Petitioner's status reverted to nonimmigrant visitor. Petitioner did not appeal the BIA's decision.

In May 1989, the INS issued an order to show cause charging Petitioner with deportability pursuant to 8 U.S.C. § 1251(a)(2), for having overstayed a nonimmigrant visitor's visa. At her initial deportation hearing, Petitioner admitted the allegations and applied for suspension of deportation and for voluntary departure. The hearing was continued to January 1990, to allow Petitioner to make these applications. After the continued deportation hearing, these applications were denied because of Petitioner's false testimony during her rescission proceeding, thus precluding her from meeting the good moral character requirement which would make her eligible for suspension of deportation and voluntary departure under 8 U.S.C. § 1254(a)(1).

The BIA affirmed and also denied Petitioner's motion to remand. Petitioner timely appealed to this Court. On August 16, 1993, this Court affirmed the BIA's final order.[2] However, the Court granted a stay of deportation pending adjudication of a motion to reopen, filed by Petitioner based on the May 1993 INS approval of an I–130 visa petition filed by Petitioner's current husband, Edward Simmons.

On August 5, 1994, the BIA denied Petitioner's motion to reopen to apply for adjustment of status on the grounds that Petitioner's fraudulent immigration history made it inappropriate to permit Petitioner to adjust her status. Petitioner now appeals the denial of her motion to reopen.

## DISCUSSION

■ We review a denial of a motion to reopen to seek discretionary relief such as adjustment of status for an abuse of discretion. *I.N.S. v. Abudu,* 485 U.S. 94, 105, 108 S.Ct. 904, 912, 99 L.Ed.2d 90 (1988). This Court thus reviews Petitioner's appeal of the BIA's denial of her motion to reopen "for an abuse of discretion and will not disturb the BIA's ruling unless the BIA has acted arbitrarily, irrationally, or contrary to law." *Israel v. I.N.S.,* 785 F.2d 738, 740 (9th Cir. 1986) (citing *Sangabi v. I.N.S.,* 763 F.2d 374, 375 (9th Cir.1985)). "The BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so." Id. (citations omitted).

### A. Statutory Ineligibility

■ Petitioner argues that she is not statutorily ineligible for adjustment of status because she did not testify falsely at her 1986 rescission hearing. However, Petitioner is collaterally estopped from raising this issue. In the related case, 92–70034, this Court affirmed the BIA's determination that Petitioner gave false testimony during her rescission proceedings and is thus statutorily barred from suspension of deportation. Moreover, as set forth below, even statutory eligibility would not entitle Petitioner to discretionary relief.

### B. Approved I–130 Petition

Petitioner also argues that in denying her motion to reopen, the BIA failed to consider the existence and effect of Petitioner's husband's approved I–130 petition. The argument that the BIA failed to consider the existence of the approved petition is without merit. The opinion of the BIA expressly sets forth the existence of this petition as one of Petitioner's equities.

■ Petitioner next contends that the approved petition qualifies her for suspension of deportation, thus apparently arguing that

---

1. Petitioner had divorced Eugene Eide in 1985 and married Edward Simmons in 1986. She then divorced Simmons in March 1988 and remarried him in 1993. At the time of the deportation proceedings in 1990, Petitioner was living with Simmons.

2. The decision in the related case, 92–70034, is an unpublished disposition. 5 F.3d 535 (Table)(9th Cir.1993).

because she merits suspension of deportation, she has set forth a prima facie case for relief, making denial of the BIA of her motion to reopen improper.

■ Motions to reopen immigration proceedings are disfavored. *I.N.S. v. Doherty,* 502 U.S. 314, 323, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992). The BIA may deny a motion to reopen for three reasons. First, the BIA may deny on the grounds that the movant has not established a prima facie case for the underlying relief he seeks. *Abudu,* 485 U.S. at 104, 108 S.Ct. at 912. Second, a denial may be based on the determination that the movant has not introduced previously unavailable, material evidence as required by 8 C.F.R. § 3.2. *Id.* at 104–05, 108 S.Ct. at 912. Finally, "in cases in which the ultimate grant of relief is discretionary (asylum, suspension of deportation, and adjustment of status, but not withholding of deportation), the BIA may leap ahead, as it were, over the two threshold concerns (prima facie case and new evidence/reasonable explanation), and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief." *Id.* at 105, 108 S.Ct. at 912.

In Petitioner's case, the BIA denied her motion to reopen on the grounds that in light of her fraud, reopening would "reward injudiciously the respondent's unlawful and unfair behavior[.]" (A.R. at 4.) The BIA did not find that Petitioner's marriage to a United States citizen, even in conjunction with her other equities which the BIA assumed were true, overcame Petitioner's history of fraud. The BIA has discretion to deny a motion to reopen even if the movant has set forth a prima facie case for relief. *Id.* at 105–06, 108 S.Ct. at 912–13.

In Petitioner's case, the BIA did "leap ahead" and found that Petitioner "would not merit a favorable exercise of discretion even if her case were reopened to allow her to apply [for adjustment of status]." (A.R. at 4). Even if Petitioner demonstrated statutory eligibility for adjustment of status, "the INS's decision to grant an adjustment of status is purely discretionary." *Kim v. Meese,* 810 F.2d 1494, 1497 (9th Cir.1987). "Adjustment of status is an extraordinary remedy to be granted only in meritorious cases, and the alien 'has the burden of persuading the [INS] to exercise [its] discretion favorably.'" *Id.* (citations omitted).

As set forth above, the BIA did not find that Petitioner's marriage to a United States citizen and her other equities overcame Petitioner's history of fraud. Petitioner provides no authority to support her conclusion that the BIA acted arbitrarily in reaching this conclusion. The BIA acts arbitrarily when it fails to exercise its discretion favorably in one case, but does so in a factually similar case. *See Israel,* 785 F.2d at 741. Petitioner has failed to demonstrate that the BIA has acted arbitrarily in determining that as a result of her immigration history, she does not merit an administrative act of grace. The Court will not disturb the BIA's ruling unless the BIA has acted "arbitrarily, irrationally, or contrary to law." *Id.* at 740 (citations omitted).

### C. Due Process and Equal Protection

Petitioner argues that the BIA ignored the fact that Petitioner's children were granted § 212(k) (8 U.S.C. § 1182(k)) waivers[3] even though Petitioner contends they were involved in the circumstances surrounding the 1986 fraudulent death certificate and subject to the same order to show cause proceedings as Petitioner. Petitioner's argument is not entirely clear. However, in an addendum to Petitioner's June 1993 motion to reopen, Petitioner contends that her deportation would deny her due process and equal protection because "[i]f waiver is granted to the children on essentially the same facts then relief should be granted to [Petitioner] because the fraud as to all three persons is the same." (A.R. at 44.)

Petitioner now argues in this appeal that the BIA violated her rights to due process and equal protection by ignoring her constitutional arguments and incorrectly assuming

---

**3.** Petitioner's two children were granted § 212 waivers of deportability on September 23, 1992, and January 13, 1993.

that Petitioner's children were not part of the fraud. Petitioner provides no support for her contention that her children were involved in the fraud and points to nothing in the record to suggest that the BIA improperly ignored constitutional arguments before it. The Court will not disturb the BIA's ruling because Petitioner has not demonstrated that the BIA has acted contrary to law. *Israel,* 785 F.2d at 740.

## CONCLUSION

Based upon the foregoing, Petitioner has failed to establish that the BIA abused its discretion denying her motion to reopen to apply for adjustment of status.

The petition is denied and the BIA's decision is affirmed.